IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOSHUA LAKIN                                                                                           PLAINTIFF

V.                                            NO. 14-5053

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Joshua Lakin, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on April 20, 2011, alleging disability since November 22, 2009, due to anxiety, panic attacks, PTSD (post-traumatic stress disorder), depression, poor memory, loss of concentration, and difficulty

dealing with the public. (Tr. 185). An administrative hearing was held on July 24, 2012, at which Plaintiff appeared with counsel, and he and his girlfriend testified. (Tr. 26-84).

By written decision dated October 22, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – PTSD, panic disorder, and intermittent explosive disorder. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work where interpersonal contact is incidental to work performed and does not involve contact with general public, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct and concrete.

(Tr. 17). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as dishwasher and machine tender at the light and sedentary levels. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, who considered additional evidence and denied the request on December 4, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 18, 19, 22).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

Plaintiff saw Sean Millhouse, LAC, at Ozark Guidance Center (OGC) on November 29, 2010. (Tr. 265). At that time, Plaintiff was diagnosed as follows:

| | |
|---|---|
| Axis I: | PTSD<br>Intermittent Explosive Disorder |
| Axis II: | Deferred |
| Axis III: | None known |
| Axis V: | 32 |

(Tr. 270). Plaintiff saw Mr. Millhouse again on December 2, 2010, and was discharged from OGC on April 5, 2011, because "Client did not return/Dropped out of treatment." (Tr. 276).

On July 7, 2011, a Mental Diagnostic Evaluation was performed by Mary Jane Sonntag, Psy.D. (Tr. 280). Plaintiff reported to Dr. Sonntag that he had undergone two or three outpatient treatments in 2008 at Clark Center in Monette, Missouri, for depression, and had two sessions in 2011 at OGC in Bentonville, Arkansas (Tr. 280). Plaintiff reported he had not taken any medications since 2009, because "I can't stand leaving the farm half the time." (Tr. 280). Plaintiff reported that he lived by himself and had no electricity or water. (Tr. 281). Plaintiff reported that he began drinking alcohol at 12 or 13 years of age, and still drank "a six pack every two months, maybe." (Tr. 281). Dr. Sonntag diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Posttraumatic Stress Disorder<br>Panic Disorder with Agoraphobia |
| Axis II: | Deferred |

3

   Axis V:   45-50

(Tr. 283). Dr. Sonntag found that Plaintiff was able to shop independently and was capable of performing activities of daily living independently. (Tr. 283). She also found that Plaintiff demonstrated no problems communicating, but appeared angry at the beginning of the evaluation; spoke intelligibly and effectively; exhibited no problems in the testing environment; exhibited no difficulty with the ability to attend and sustain concentration during the evaluation; and persisted on the tasks of the evaluation. (Tr. 283-284). Dr. Sonntag noted that Plaintiff apparently left out much of his substance abuse history when compared with the information provided through the progress notes from OGC and thus, it appeared that he was not completely forthright with Dr. Sonntag. (Tr. 284).

  On August 8, 2011, non-examining consultant, Sheri L. Simon, Ph.D., completed a Psychiatric Review Technique Report, wherein she found that Plaintiff had a mild degree of limitation in activities of daily living and in maintaining concentration, persistence, or pace, had a moderate degree of limitation in maintaining social functioning, and no episodes of decompensation, each of extended duration. (Tr. 300). Dr. Simon also completed a Mental RFC Assessment form on August 8, 2011, wherein she found that although Plaintiff may have some problems functioning, his symptoms did not preclude him from engaging in simple, repetitive, routine tasks. (Tr. 307). After reviewing the evidence in the file, Dr. Simon found that the overall medical records supported a rating of semi-skilled capacity. (Tr. 307). On November 21, 2011, Abesie Kelly, Ph.D., affirmed Dr. Simon's assessment. (Tr. 312).

  On December 20, 2011, Plaintiff presented to Northwest Medical Center – Springdale, and reported he was "having a rough day." (Tr. 316). He denied suicidal

ideation, but stated he felt "like I could hurt someone." (Tr. 316). Plaintiff reported worsening depression, and stated he had been on medication in the past, but had not taken any recently. (Tr. 317). Plaintiff thereafter left the emergency room before receiving any treatment. (Tr. 318).

At the hearing, Plaintiff testified that he did not have any income and there was no way he could guarantee to even get to the appointments half the time, as far as being able to afford to go. (Tr. 54). His driver's license had been suspended for child support. (Tr. 54). He was taking no medications at the time of the hearing. (Tr. 63). Plaintiff testified that he smoked once in a while, but could not afford them every day. He stated that his sister provided him cigarettes at times. (Tr. 77).

Subsequent to the hearing, Plaintiff provided records indicating he presented to OGC on November 20, 2012, and was diagnosed as follows:

    Axis I:     Bipolar

    Axis II:    B.P.D.

    Axis V:     40

(Tr. 326).

On May 7, 2013, Plaintiff presented to Northwest Medical Center in Bentonville, stating he was not dealing with life well and drank approximately 10 beers since noon that day, and had a history of hurting himself. (Tr. 328). He decided to go to the emergency room and get help. (Tr. 328). The hospital records reveal that Plaintiff had not taken any medications for five to six months due to money issues, smoked cigarettes, and admitted to social use of alcohol. (Tr. 330). The initial clinical impression was:

    1. Suicide Ideation

      2. Acute Alcohol Intoxication

      3. Acute Depression

(Tr. 331). It was reported that two days prior, Plaintiff said he consumed "a bunch of sleeping pills" and wanted to jump from a window. (Tr. 338). Plaintiff reported he smoked approximately two packs of cigarettes a day, did mostly binge drinking, used marijuana as recent as one month prior, and his last use of methamphetamine was six to seven months prior. (Tr. 339). He was not on any medications at the time. The Assessment and Plan was as follows:

1. Suicidal ideation. The patient is a suicidal risk, and an effort was done from the emergency room to place him in a psychiatric facility but so far efforts have been futile. I am being asked to keep him under observation/admission until that is done. The patient is currently very cooperative and hence I would like to place him under observation until we find a suitable place for him for appropriate disposition.

2. Abrasions/lacerations. This appears to be old and healing. I do not see any necessity to give him antibiotics since the patient does not have any fever of leukocytosis. The area surrounding appears to be reddened and inflamed but not infected.

3. Alcohol abuse/tobacco abuse/drug abuse. These issues needs [sic] to be discussed later on, when the patient is recovering from his bipolar disorder.

(Tr. 339-340).

**II.**    **Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the

6

record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See

20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.  Discussion:

Plaintiff raises the following issues in this matter:  1) Whether the ALJ erred in his RFC determination; 2) Whether the ALJ properly considered the GAF scores; 3) Whether the ALJ posed a proper hypothetical question to the VE; and 4) Whether there is substantial evidence to support the ALJ's decision.

#### A.  Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ recognized that the Plaintiff would experience some limitations due to his impairments, but felt the degree to which they were functionally limiting was an issue open to question. (Tr. 17).  The ALJ then pointed to several inconsistencies in the record, such as: lack of evidence of any follow up medical treatment or

8

prescribed psychotropic medications; no additional medical evidence was received by the ALJ other than documentation showing Plaintiff left an emergency room without receiving treatments; Plaintiff had not received the type of medical treatment one would expect for a totally disabled individual; Plaintiff was non-compliant with recommended mental health treatment at OGC; and Dr. Sonntag suggested Plaintiff was not completely forthright with her regarding his substance abuse history. (Tr.18).

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Further, it is noteworthy that Plaintiff smoked two packs of cigarettes a day and was able to obtain alcohol on a consistent basis during the relevant time period. Plaintiff's smoking habit discredits his disability allegations. See Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### B.     RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);

9

Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'"  Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

In his decision, the ALJ considered all of the medical records, observations of his treating physician, Plaintiff's testimony, and the testimony of Plaintiff's girlfriend in determining Plaintiff's RFC.  The ALJ considered Dr. Sonntag's evaluation as well as the state agency consultants' opinions, and although the state agency consultants suggested Plaintiff could perform semiskilled work, the ALJ determined Plaintiff could perform unskilled work and added no contact with the general public. (Tr. 20).  Plaintiff's daily activities, such as housework, laundry, and cutting wood, mowing, and remodeling/repairing his mobile home are not activities that are consistent with a disabling condition.

The Appeals Council had before it the record dated May 7, 2013, which reflects that Plaintiff presented himself to Northwest Medical Center in Bentonville, stating that he was not dealing with life well and had consumed approximately 10 beers that day. (Tr. 328).

Plaintiff was diagnosed with suicidal ideation, abrasions/lacerations, alcohol abuse/tobacco abuse/ drug abuse. (Tr. 339). The Appeals Council considered the additional evidence, and concluded it did not provide a basis for changing the ALJ's decision. (Tr. 1-2). When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.

The ALJ issued his decision on October 22, 2012. (Tr. 10-25). Plaintiff did not present himself to the hospital until May 7, 2013. (Tr.328). "Where evidence obtained subsequent to the ALJ's decision is at odds with the evidence before the ALJ, such evidence may reflect only a post-hearing deterioration in a claimant's mental condition, which is beyond the scope of judicial review." Probst v. Colvin, No. 4:12CV439AGF(FRB), 2013 WL

950996 at *13 (E.D.Mo. Feb. 22, 2013) citing Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

C.     **GAF Scores:**

Plaintiff argues the ALJ did not properly consider his GAF scores. Although one of Plaintiff's counselors assessed a GAF score of 32, this was from a non-acceptable medical source – Sean Millhouse, LAC. (Tr. 270). It is also noteworthy that Plaintiff was non-compliant with his treatment. In addition, when Dr. Sonntag examined Plaintiff on July 7, 2011, she assessed a GAF score of 45-50. A GAF score is not essential to the RFC's accuracy. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). "[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010).

The Court finds the ALJ considered the totality of the evidence and specifically evaluated all of the medical evidence, and there is substantial evidence to support his findings.

D.     **Hypothetical Question to the VE:**

Plaintiff argues the ALJ erred in his step five findings. At the hearing, the ALJ posed the following hypothetical question to the VE:

> Q: So if you had a hypothetical individual same age, education and past work as Mr. Lakin, who has no exertional limitations per se, but from a non-exertional standpoint is limited to work where interpersonal contact is incidental to the work performed. The complexity of tasks is learned and performed by rote, with few variables, use of little judgment. Supervision required is simple, direct and concrete. And further which does not involve

> contact with the general public. Do you think such an individual could perform any of the claimant's past work?
>
> A: No, sir.
>
> Q: Can you identify medium, light and sedentary level work that would accommodate those limits?
>
> A: Yes, sir. There would be jobs at the medium exertion level that would – could be performed within those limits. One example would be dishwasher, …At the light exertion level, there would be unskilled machine tender jobs. …And there would also be machine tender jobs at the sedentary level. …

(Tr. 79).

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing such jobs as dishwasher and machine tender jobs at the light and sedentary levels. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.   Conclusion:**

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right**

**to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of September, 2015.


_s/ Erin L. Setser_
HON. ERIN L. SETSER
 UNITED STATES MAGISTRATE JUDGE